L. ROBERT MURRAY
United States Attorney
District of Wyoming
P.O. Box 668
Cheyenne, Wyoming 82003

DAVID A. KUBICHEK
Assistant U.S. Attorney
District of Wyoming
P.O. Box 22211
Casper, Wyoming 82602-5010

TODD KIM
Assistant Attorney General
U.S. Department of Justice
Environment and Natural Resources Division
950 Pennsylvania Avenue, N.W.
Washington, DC 20530-0001

ELINOR COLBOURN
Senior Counsel for Wildlife Programs
Environmental Crimes Section
150 M. St., N.E., Room 4.103
Washington, DC 20530-0001

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

2022 APR -1  AM 11: 28

MARGARET BOTKINS, CLERK
CASPER

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

| UNITED STATES OF AMERICA, | |
|---|---|
| Plaintiff, | **PLEA AGREEMENT** |
| vs. | |
| ESI ENERGY, LLC, | 22-CR-48-KHR |
| Defendant. | |

**PLEA AGREEMENT**

1

Pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, the United States Department of Justice, by and through the United States Attorney for the District of Wyoming and the Environmental Crimes Section of the Environment and Natural Resources Division (hereinafter "the Department" or "the government"), and defendant ESI Energy, LLC (hereinafter "ESI" or "the defendant"), by and through its undersigned representatives, and pursuant to requisite corporate authority, enter into this Plea Agreement ("Agreement"). The terms of the Agreement are as follows:

1.  The defendant is charged in the District of Wyoming by Information with three violations of the Migratory Bird Treaty Act ("MBTA"), 16 U.S.C. §§ 703, 707(a).

2.  The defendant agrees to waive any defense based on venue in this District, and voluntarily consents to the filing in this District of Count Three of the Information, an MBTA offense committed in the District of New Mexico, and consents to the prosecution of the defendant in this District on each of the three charges in the Information.

3.  The defendant's representative and counsel have read the charges against the defendant and understand the nature and elements of the crimes with which the defendant has been charged.

4.  The defendant will enter a voluntary plea of guilty to the charges in the Information in this case.

5.  *Nature of the Agreement:* The parties agree that this Agreement, including the Attachments hereto, shall be filed and become a part of the record in this case, and will be governed by Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure. The defendant understands that if the Agreement is accepted by the Court, it will not have an automatic right to withdraw its plea. Fed. R. Crim. P. 11(d)(2)(A). This Agreement binds

the Department and the defendant. During the term of probation, the defendant shall notify the United States Probation Office for the District of Wyoming of any corporate name change or any other change in corporate structure or governance that would materially affect this Agreement and/or the Eagle Management Plan discussed herein, within 30 days of such change. No change in name, business reorganization, merger, change of legal status, or similar action or event shall alter the defendant's responsibilities under this Agreement. The defendant agrees that it shall not knowingly engage in any action to seek to avoid the obligations and conditions set forth in this Agreement.

6. *Effect of Withdrawal from the Agreement:* The parties stipulate and agree that if the defendant moves to withdraw its guilty plea, entered pursuant to and receiving the benefits of this Agreement, and if it successfully withdraws its plea either in the district court or on appeal, this Agreement will become null and void. Moreover, if the defendant at any time after judgment is entered obtains dismissal, reversal, or remand of the conviction for any reason, the government will be permitted to restore all charges not filed pursuant to this Agreement. The defendant, in that circumstance, expressly waives any claim of double jeopardy or right to have this Agreement enforced. In such event, the defendant waives any objections, motions, or defenses based upon the Statute of Limitations, the Speedy Trial Act, or any other potential restriction on the re-institution of counts dismissed, or institution of counts surrendered, as part of the consideration given by the government in this Agreement.

7. *Admission of Guilt:* The defendant will plead guilty to the charges in the Information in this case. The defendant understands the nature and elements of the offense, under Tenth Circuit law, of the crimes to which it is pleading guilty and agrees

3

that if this matter were to proceed to trial the government would prove beyond a reasonable doubt, by admissible evidence, the facts set forth in the Statement of Facts (Attachment A). In pleading guilty, the defendant agrees and stipulates to the facts set forth in Attachment A.

8.  *Maximum Punishment Provided by Law:* The defendant has been advised of and understands the maximum potential punishment provided by law:

Counts One through Three each allege a Class B Misdemeanor, in violation of the MBTA, carrying a maximum penalty for an organizational defendant of a fine of not more than $15,000 per count (per 16 U.S.C. § 707(a)), or twice the gross gain or loss resulting from the unlawful conduct (per 18 U.S.C. § 3571(d)); five years of probation (per 18 U.S.C. § 3561(c)(2)); and a special assessment of $50 (per 18 U.S.C. § 3013(a)(1)(B)(ii)).

In addition, the Court could impose conditions of probation to include payment of community service or restitution pursuant to 18 U.S.C. § 3563(b). A conviction also could result in additional administrative sanctions such as suspension, debarment, and listing to restrict rights and opportunities of the defendant to contract with or receive benefits, loans, or assistance from agencies of the United States.

9.  *Elements of the Charges:*

The MBTA provides, in relevant part that, unless and except as permitted by regulation, it shall be unlawful at any time, by any means or in any manner, to pursue, hunt, take, capture, kill, or attempt to take, capture, or kill any migratory bird. 16 U.S.C. § 703. Each bird listed in the Information is a "migratory bird" as that term is

defined in the MBTA. *See* 50 C.F.R. §§ 10.12, 10.13. "Take" means, in relevant part, to wound or kill. 50 C.F.R. § 10.12. Solely for the purposes of this Agreement and its attachments, defendant stipulates that a collision between an eagle and a rotating wind turbine blade that causes death or injury to the eagle is a "take" for purposes of the MBTA under Tenth Circuit law.

10.  The defendant has been advised of the nature of the charges made against it and the elements of the crimes to which it is entering a guilty plea. The defendant understands that if the case were to go to trial the government would be required to prove each and every element of the crimes beyond a reasonable doubt. The defendant further acknowledges that these are the elements of the crimes charged in the Information:

(a) Count One: On or about the dates set forth in the Information, within the District of Wyoming, the defendant, through a person or entity acting on its behalf, did take at least one "migratory bird," as that term is defined in 50 C.F.R. §§ 10.12 and 10.13, at its Cedar Springs facility, and the takings were unlawful under Tenth Circuit law, in that neither the defendant nor the person or entity acting on its behalf obtained a permit or other valid authorization to take the migratory birds listed in the charge.

(b) Count Two: On or about the dates set forth in the Information, within the District of Wyoming, the defendant, through a person or entity acting on its behalf, did take at least one "migratory bird," as that term is defined in 50 C.F.R. §§ 10.12 and 10.13 at its Roundhouse facility, and the takings were unlawful under Tenth Circuit law, in that neither the defendant nor the person or entity acting on its behalf obtained a permit or

other valid authorization to take the migratory birds listed in the charge.

(c) Count Three: On or about the dates set forth in the Information, within the District of New Mexico (brought in the District of Wyoming pursuant to the venue waiver above), the defendant, through a person or entity acting on its behalf, did take at least one "migratory bird," as that term is defined in 50 C.F.R. §§ 10.12 and 10.13, at its New Mexico Wind facility, and the takings were unlawful under Tenth Circuit law, in that neither the defendant nor the person or entity acting on its behalf obtained a permit or other valid authorization to take the migratory birds listed in the charge.

11. The defendant understands that by entering the guilty pleas, the government will not be required to present proof of its guilt and the elements recited herein because there will be no trial if the Court accepts its plea of guilty and the Agreement of the parties. The defendant understands that the government has the right to use any statement made by any representative of the defendant during the entry of plea in this case against the defendant in a subsequent prosecution.

12. *Recitation of Rights*:

    (a) If the defendant persisted in a plea of not guilty to the charges against it, it would have the right to a public and speedy trial in the United States District Court.

    (b) The jury would find the facts and determine, after hearing all of the evidence, whether or not it was persuaded of the defendant's guilt beyond a reasonable doubt.

    (c) The defendant has the right to be represented by counsel at trial and every other stage of these proceedings.

    (d)    At a trial the government would be required to present its witnesses and other evidence against the defendant. The defendant would be able to confront those government witnesses and its attorney would be able to cross-examine them. In sum, the defendant could present witnesses and other evidence in its own behalf. If the witnesses for the defendant would not appear voluntarily, it could require their attendance through the subpoena power of the court.

    (e)    If convicted, and within 10 days of the entry of the Judgment and Commitment, the defendant would have the right to appeal its conviction to the Tenth Circuit Court of Appeals for review to determine if any errors were made which would entitle it to reversal of conviction.

13.    *Waiver of Rights by Plea:* The defendant understands that by pleading guilty pursuant to this Agreement it is waiving all the rights set forth in paragraph 12. The defendant's attorneys and corporate representative understand those rights and the consequences of its waiver of those rights.

14.    *Corporate Authorization:* Prior to entry of plea, the defendant will provide to the Court and the Department a corporate resolution authorizing the entry of plea and compliance with all provisions of this Agreement, and that the defendant's designated representative is authorized to appear on behalf of the defendant to enter the guilty plea in the District of Wyoming and appear for imposition of the sentence, including by remote

means.

15. *Stipulations:* The parties acknowledge that, inasmuch as the violations to which the defendant will plead guilty are Class B misdemeanors, the advisory U.S. Sentencing Guidelines do not apply. USSG § 1B1.9. The parties stipulate and agree to a sentence pursuant to Fed. R. Crim. P. 11(c)(1)(C) as follows:

    a. The parties stipulate and agree to a total fine of $1,861,600. To resolve this matter expeditiously, the parties have not attempted to calculate the precise amount of gain derived by defendant from the offenses. Instead, the parties stipulate that the proposed fine amount is less than twice the "gross gain" realized by the defendant as the result of the offenses in this case. The parties agree that the $1,861,600 fine imposed is properly directed to the North American Wetlands Conservation Fund for wetlands conservation work, as specifically provided in the North American Wetlands Conservation Act. 16 U.S.C. § 4406(b).

    b. The parties stipulate and agree that the defendant shall be sentenced to a term of 60 months' probation with the following specific conditions imposed in addition to the standard conditions:

        i. Within the first six months of probation, the defendant will make restitution of a total of $6,210,991 to the relevant agency of each state in which any of the 123 eagle fatalities and injuries (of the 150 eagles found dead at defendant's facilities)

8

occurred, on a proportionate basis (the parties have, for the purposes of this Agreement, excluded (a) 13 eagles documented to have been killed between March 8, 2021, and December 3, 2021, when a regulation was in effect that interpreted the MBTA as not applying to incidental takings and killings, and (b) 14 eagles as to which a formal cause of death was not determined). The amount of restitution to each state is, specifically:

| | | |
|---|---|---|
| California: | $4,645,619.83 | [92 eagles] |
| Wyoming: | $403,966.94 | [8 eagles] |
| New Mexico: | $100,991.74 | [2 eagles] |
| North Dakota: | $656,446.28 | [13 eagles] |
| Colorado: | $151,487.60 | [3 eagles] |
| Michigan: | $151,487.60 | [3 eagles] |
| Arizona: | $50,495.87 | [1 eagle] |
| Illinois: | $50,495.87 | [1 eagle] |

Defendant is credited with already paying, through a subsidiary, to the State of California, pursuant to a prior civil agreement with the Attorney General of California and the Audubon Society Chapters of Golden Gate, Ohlone, Mount Diablo, Santa Clara Valley and Marin, and Californians for Renewable Energy, $2,206,260.00, making the final amount owed in restitution to California $2,439,359.83. Restitution will be deposited to the Clerk of the Court for the District of Wyoming, to be paid to the relevant state

9

agencies as directed by the U.S. Fish and Wildlife Service ("USFWS"). The defendant will not claim any of the restitution, or any other amount herein, as a tax deduction or characterize it in any manner or forum as a donation or contribution or voluntary action.

ii. The defendant will implement the Eagle Management Plan ("EMP") set forth in Attachment B hereto, which was developed with the assistance of USFWS and the Department. The purpose of the EMP is to avoid and minimize eagle mortalities during the period between sentencing and final action on an application under the Bald and Golden Eagle Protection Act (hereinafter "Eagle Act") for an Eagle Take Permit ("ETP") for the following 50 wind facilities: Vasco Wind, North Sky River, Golden Hills, Golden Hills North, Cedar Springs I, Cedar Springs III, Roundhouse, New Mexico Wind, Bronco Plains, Soldier Creek, Jordan Creek, Wheatridge II, Hubbard, Buffalo Ridge, Heartland Divide II, Eight Point, Irish Creek, Clearwater, Wilton, Ashtabula, Ashtabula II, Borderlands, Brady, Langdon, Langdon II, Oliver, Pheasant Run I, Skeleton Creek, Tuscola Bay I, Tuscola Bay II, Blackwell, Crystal Lake I, Crystal Lake II, Crystal Lake III, Golden West, Green Power, Limon Wind I, Limon Wind II, Montezuma, Peetz I, Rush Springs, Sky River,

10

Stateline, Torrecillas, White Hills, Pratt, Perrin Ranch, Lee/DeKalb, Casa Mesa and Emmons Logan (hereinafter "the Listed Facilities"). The EMP will terminate at each of these facilities upon the issuance of a final ETP decision for the facility or upon termination of any extended non-prosecution period for the facility (see below), whichever is earlier. The EMP has been approved by the Chiefs of Migratory Birds for the relevant USFWS Regions and the Department. The EMP may be modified from time to time to the extent there is mutual agreement of USFWS and the defendant.

iii.     The defendant, USFWS, and the Department will meet at least once every six months during the first two years of the probationary period, and once every 12 months thereafter, to discuss the defendant's overall progress in implementing the EMP and to address any issues with, or proposed amendments to, the EMP. Every 12 months during the probation period, the defendant shall report in writing to the Court (via the U.S. Probation Office), USFWS, and the Department on the defendant's progress in implementing the EMP.

iv.     The defendant will apply for ETPs for each of the Listed Facilities by the dates established in the EMP, and diligently pursue the ETPs thereafter.

11

      v.      As noted in the EMP, the parties, recognizing that actual costs may vary from year to year based on advances in science and technology and the specific measures implemented during the term of the EMP, agree that the defendant, either directly or through its affiliates, will not be required to spend more than $27 million over the five years of probation, and no more than $7 million in either of the first two years of probation and no more than $9 million in any of the third, fourth and fifth years of probation, to implement the EMP (not including certain costs as set forth in the EMP).

      vi.      Within 30 days of the entry of its plea, the defendant will provide to USFWS its site assessments (including risk assessments) and turbine siting plans for the four Listed Facilities not yet under construction or operational and due to become operational in 2022.

Both parties agree to support the stipulations above throughout the sentencing proceedings.

16.    *Non-Prosecution*:

    a.    Past takings. As part of this Agreement and in consideration of the defendant's plea of guilty to the charges in the Information, the defendant's promises and commitments in this Agreement, the defendant's obligations under the EMP, and the defendant's compliance with both this Agreement and the EMP,

12

the District of Wyoming and the Environmental Crimes Section agree to forego additional criminal prosecution for any takings of eagles at the Listed Facilities that occurred before the date of this Agreement.

  b. Future takings, prior to an ETP. The government's purpose in agreeing to the EMP is to provide a collaborative framework for the defendant's implementation of measures that will minimize and mitigate future unpermitted eagle mortalities at the Listed Facilities, and that the government anticipates will ensure compliance with the requirements of the MBTA and the Eagle Act. However, the parties acknowledge that some eagles may be taken at the Listed Facilities despite conscientious implementation of the EMP, before an ETP can be issued for each Listed Facility. Thus, the government further agrees not to prosecute, including seeking a probation violation petition, for unpermitted takings of eagles by wind turbines at the Listed Facilities which occur on the date of this Agreement or thereafter during the period of probation or any extended period of non-prosecution, but before an ETP is issued (or other final action is taken on an ETP application) for the Listed Facility in question, provided the defendant remains in control of the Listed Facility at which the take occurs, and remains in compliance with the EMP and other terms of this Agreement, including all mitigation requirements. While any wind power facility has the potential to take eagles, any facility owned or otherwise controlled by the defendant that is not a Listed Facility is not expected by the defendant to take an eagle during the period of probation. If an eagle taking nevertheless occurs during the period of probation at such

13

a non-listed facility, and if the defendant or any entity or individual on behalf of the defendant or its affiliates either submits a complete ETP application within six months of that eagle death or otherwise resolves any such taking with and to the satisfaction of the USFWS within nine months of that eagle death, the government further agrees not to prosecute that taking. The submission of an ETP application based on the use of a "priors only" model for USFWS analysis shall not, without more, render such an application incomplete.

      c.      Given the number of Listed Facilities, and the number of facilities owned by companies other than the defendant already in the process of seeking such permits prior to the defendant's anticipated applications, the parties expect the application process could be lengthy. Therefore, the government will extend its "non-prosecution" agreement under the Eagle Act and the MBTA, upon request of defendant, for up to five years beyond the probationary period for any Listed Facilities for which final action on an ETP application has not been submitted or final action on such an application has not issued, provided that the government determines in its sole discretion that the defendant has diligently and in good faith pursued an ETP for such facilities and complied, and continues to comply, with the EMP at each such facility. Any extended non-prosecution agreement will be in writing and signed by both parties. A new total cost cap for minimization measures required pursuant to the EMP, to be applied during the full period of extension, will be calculated by multiplying the number of years of the extension granted, by $200,000 for each Phase I facility, $100,000 for each Phase II facility, and $75,000

14

for each Phase III facility, as to which no final action on an ETP application has been taken as of the start of the period of extension. The resulting cost cap will be divided equally among the years of the agreed upon extension. The non-prosecution agreement will be extended as to each such Listed Facility until the earliest of the following events: (1) the defendant has obtained an ETP for the facility in question and/or any appeals of such permits, or denials thereof, have been resolved; or (2) the end of (i) the period of probation if there is no relevant extended period of non-prosecution, or (ii) any extended period of non-prosecution agreed to under this subparagraph for the Listed Facility in question.

    d.    This Agreement applies only to unpermitted takings of eagles at the Listed Facilities (except as provided by the final two sentences of paragraph 16.b above), and has no effect on any proceedings against any entity or individual not expressly mentioned herein, including the actual or potential criminal liability of any individuals. The government has informed the defendant that the government does not intend to prosecute any subsidiaries or affiliates of ESI, or individuals employed by ESI or any of its subsidiaries or affiliates, for any conduct described herein, unless it obtains new and material incriminating information not presently known to the government, including USFWS. The government acknowledges that information presently known to it includes the documents, testimony and other information acquired by the government in the course of the investigation of this matter. The government further has informed the defendant that this plea resolves past unpermitted eagle takes at Listed Facilities for purposes of 50 C.F.R. §

15

22.80(e)(8). Defendant understands and agrees that nothing in this Agreement limits the prosecuting authority of any federal, state, or local regulatory or prosecuting entity, other than the United States Attorney's Office for the District of Wyoming and the Environmental Crimes Section. The government confirms, however, that the United States Attorney's Offices for the Eastern and Northern Districts of California and the District of New Mexico participated in or were informed of the investigation resulting in this Agreement, have been consulted concerning the terms of this Agreement and have no objection to the United States Attorney's Office for the District of Wyoming and the Environmental Crimes Section entering into it. Furthermore, this Agreement does not provide or promise any waiver of any civil or administrative actions, sanctions, or penalties that may apply including but not limited to: fines, penalties (although USFWS has indicated it does not intend to seek civil fines or penalties for the eagle fatalities for which the defendant has agreed to pay restitution and fines in this Agreement, or those fatalities specifically excluded from the restitution amount as set forth in paragraph 15.b.i), claims for damages to natural resources, suspension, debarment, listing to restrict rights and opportunities of defendant to contract with or receive assistance, loans, and benefits from U.S. agencies, licensing, injunctive relief, or remedial action to comply with any applicable regulatory requirement. It is the current policy of USFWS to focus enforcement efforts on specific types of activities that both foreseeably cause incidental take and where the actor fails to implement known beneficial practices to avoid or minimize incidental take. An entity conducting

activities in accordance with applicable beneficial practices for avoiding and minimizing incidental take is not a priority for enforcement. Thus, to the extent that policy remains in effect (as currently written or as it may be modified from time to time), and the defendant conducts its activities as contemplated by that policy, it would not be a priority for enforcement.

17. *Appeal Waiver - Sentencing:* The defendant acknowledges that 18 U.S.C. § 3742 affords it the right to appeal the sentence imposed in this case. In consideration for the government's concessions in this Agreement, the defendant waives any and all right to directly appeal any aspect of the sentence, including conditions of probation.

18. *Voluntary Plea:* The defendant's attorney acknowledges that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement to induce the defendant to plead guilty.

19. *Special Assessment/Financial Obligations:* The defendant recognizes that it will be responsible for a mandatory assessment of $50 on each count of the Information, pursuant to 18 U.S.C. § 3013 of the Comprehensive Crime Control Act. The defendant understands and agrees that, pursuant to 18 U.S.C. § 3613, apart from restitution, which shall be paid within the time period set forth in paragraph 15.b.i of this Agreement, monetary penalties imposed by the Court will be due and payable immediately and subject to immediate enforcement by the United States. If the Court imposes a schedule of payments, the defendant understands that the schedule of payments is merely a minimum schedule of payments and not the only method, nor a limitation on the methods available to the United States to enforce the judgment.

20. *Entire Agreement:* Any statements or representations made by the United

States, the defendant, or its counsel prior to the full execution of this Agreement are superseded by this Agreement. No promises or representations have been made by the United States or the defendant except as set forth in writing in this Agreement and the Attachments hereto. This Agreement, including the Attachments hereto, constitutes the entire agreement between the parties. Any term or condition which is not expressly stated as part of this Agreement is not to be considered part of the Agreement.

_____   3-31-2022
David A. Kubichek             Date
Appellate Chief
L. Robert Murray
United States Attorney
Attorney for the Government


_____
Todd Kim
Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice

_____
Elinor Colbourn
Senior Counsel for Wildlife Programs
Environmental Crimes Section


    I am the authorized corporate representative of defendant ESI Energy, LLC. I have read this Plea Agreement and every part of it has been carefully reviewed with responsible management and officers of defendant and its counsel. I understand the terms of this Plea Agreement and defendant voluntarily agrees to those terms. Defendant understands its rights, possible defenses, and the consequences of entering into this Plea Agreement. No promises or inducements have been made to defendant or to me other than those contained in this Plea Agreement. No one has threatened or forced defendant in any way to enter into this Plea Agreement. Defendant is satisfied with its representation and counsel in this matter.

Date: 3-30-2022

_____
Mitchell S. Ross
Vice President
ESI Energy, LLC

    I am defendant's attorney. I have carefully discussed this Plea Agreement with the authorized representative(s) of defendant. I have fully advised defendant of the corporation's rights, possible defenses, and the consequences of entering into this Plea Agreement. I believe the decision of defendant to enter into this Plea Agreement is informed and voluntary.

Date: 3-29-2022

_____
Thomas L. Sansonetti
Holland & Hart, LLP

Date: 3-29-2022

_____
Benjamin Wagner (admitted *pro hac vice*)
Gibson, Dunn & Crutcher, LLP

19