1            IN THE UNITED STATES DISTRICT COURT

2              FOR THE DISTRICT OF WYOMING

3   ────────────────────────────────────────────

4   UNITED STATES OF AMERICA,      DOCKET NO. 22-CR-048-KHR

5        Plaintiff,

6        vs.

7   ESI ENERGY, LLC,           Cheyenne, Wyoming
                       April 5, 2022

8        Defendant.         3:44 p.m.

9   ────────────────────────────────────────────

10         TRANSCRIPT OF HEARING PROCEEDINGS
           **ENTRY OF PLEA AND SENTENCING**

11

         BEFORE THE HONORABLE KELLY H. RANKIN
12       CHIEF UNITED STATES MAGISTRATE JUDGE

13

14

15

16

17

18

19

20
          *JANET DAVIS, RDR, FCRR, CRR*
21        *Federal Official Court Reporter*
   *2120 Capitol Avenue, Room 2226, Cheyenne, WY  82001*
22      *307.433-2154 * jbd.davis@gmail.com*

23  *Proceedings reported by realtime stenographic reporter;*
   *transcript produced with Computer-Aided Transcription.*
24

25

```
 1   APPEARANCES:

 2   For the Plaintiff:      DAVID A. KUBICHEK
                             Assistant United States Attorney
 3                           District of Wyoming
                             100 East B Street, Suite 2211
 4                           Casper, WY  82601

 5                           KERRY J. JACOBSON
                             Assistant United States Attorney
 6                           District of Wyoming
                             P.O. Box 449
 7                           Lander, WY  82520

 8                           ELINOR COLBOURN
                             Senior Counsel for Wildlife Programs
 9                           Environmental Crimes Section
                             United States Department of Justice
10                           150 M Street NE
                             Washington, D.C.  20002
11

12
     For the Defendant:      THOMAS L. SANSONETTI
13                           JEFFREY S. POPE
                             HOLLAND & HART
14                           2515 Warren Avenue, Suite 450
                             Cheyenne, WY  82001
15
                             BENJAMIN B. WAGNER
16                           GIBSON DUNN & CRUTCHER
                             1530 Page Mill Road
17                           Palo Alto, CA  94304

18

19

20

21

22

23

24

25
```

1          (Proceedings commenced 3:44 p.m., April 5, 2022.)

2              THE COURT:  Thank you.  Please be seated.

3              Good afternoon.  We are on the record in the matter of

4    United States of America versus ESI Energy, LLC, Case

5    No. 22-CR-48-R.

6              I note the presence on behalf of the United States of

7    Kerry Jacobson -- I believe Ms. Jacobson is there somewhere.

8              Mr. Kubichek, is she there with you?

9              MS. JACOBSON:  I am just on the line, Your Honor.

10             THE COURT:  All right.  Thank you, Ms. Jacobson.

11             And David Kubichek and Elinor Colbourn, both United

12   States Attorneys; Elinor Colbourn appearing for the

13   Environmental Crimes Section of the Justice Department, all on

14   behalf of the United States.

15             And the ESI Energy corporate representative,

16   Mr. Mitchell Ross; also appearing by video with counsel,

17   Benjamin Wagner and Tom Sansonetti, and Jeff Pope here with me

18   in the courtroom.

19             Otherwise, everyone is appearing by video for what's

20   anticipated to be an entry of plea and sentencing pursuant to

21   an Information that was filed with the Court on April 1st of

22   this year and a plea agreement also filed the same day.

23             Mr. Ross, on behalf of the defendant, I do need to ask

24   you some questions to make sure you understand what we're doing

25   here today.  Before I do so, I'll ask the courtroom deputy here

Docket 22-CR-048-R                                                    4

1   with me to administer an oath.

2        (Defendant sworn.)

3             THE COURT:  Thank you, Mr. Ross.  First of all, are

4   you able to hear and see everyone okay this afternoon?

5             THE DEFENDANT:  Yes, Your Honor.

6             THE COURT:  Mr. Ross, are you currently under the

7   influence of any alcohol or controlled substances?

8             THE DEFENDANT:  I am not, Your Honor.

9             THE COURT:  Suffering from any mental or physical

10  condition that would make it difficult for you to understand

11  what we're doing here today?

12            THE DEFENDANT:  No, Your Honor.

13            THE COURT:  And are you under the care of a medical

14  provider and currently taking any prescription medication?

15            THE DEFENDANT:  No, Your Honor.

16            THE COURT:  Mr. Ross, I understand that as the

17  corporate representative for the Defendant ESI Energy, LLC, I

18  just want to confirm that it is true that you speak for, act on

19  behalf of and are authorized to bind the Defendant ESI Energy,

20  LLC, in all aspects of this matter, including any pleas

21  entered, judgment or sentence entered.

22            Is that correct, sir?

23            THE DEFENDANT:  That's correct, Your Honor.

24            THE COURT:  All right.  And, further, you have every

25  right to appear in person with me, along with your attorneys,

1   for today's proceedings, or you can consent and agree to appear

2   by video.  And it looks as though you've signed a written

3   consent form in that regard.

4          So I just want to confirm, do you, in fact, agree and

5   consent to appear by video here this afternoon?

6          THE DEFENDANT:  I do, Your Honor.

7          THE COURT:  And on behalf of the defendant, whomever

8   wishes to speak to this, any concerns or objections to the

9   video appearance this afternoon?

10          MR. WAGNER:  No, Your Honor.

11          MR. SANSONETTI:  No, Your Honor.

12          THE COURT:  All right.  And for the United States, any

13   objections to the video appearance in this matter?

14          MS. COLBOURN:  No.

15          MR. KUBICHEK:  No, Your Honor.

16          THE COURT:  All right.  And, Ms. Colbourn, I think you

17   uttered the words no objection along with Mr. Kubichek, but I

18   don't think we picked up your words, for what it is worth.  But

19   I note your nonobjection for the record.

20          Well, I have received and reviewed the documents that

21   have been filed in this case, to include the Information and

22   the plea agreement, along with Attachments A and B.  So I have

23   familiarized myself with the proposal of the parties.

24          My plan is to go through the routine advisements, go

25   through the charges, the penalties, and then we will take pleas

Docket 22-CR-048-R                                                    6

1   for the defendant, and we will proceed to sentencing, if

2   agreeable with the parties.

3           So let me first begin with sort of a summary, if

4   there's an interest in doing so, of the proposed plea

5   agreement -- or plea agreement, I should say.

6           And maybe, Mr. Kubichek, or Ms. Colbourn -- again, I

7   know there's a great deal of detail pertaining to the plea

8   agreement, this 11(c)(1)(C) plea agreement.  But if you would

9   like to offer a brief summary of that, you're welcome to do so.

10  And then I will get confirmation from Mr. Ross and counsel to

11  ensure that that's their understanding as well.

12          So perhaps just a brief summary would be helpful at

13  this point.

14          MS. COLBOURN:  Of course, Your Honor.

15          The plea agreement provides for the plea by the

16  defendant in the District of Wyoming to three charges, one of

17  which would normally have venue in New Mexico, but venue has

18  been waived expressly to have it all heard and dealt with in

19  Wyoming.

20          Each charge is a single count of violating the

21  Migratory Bird Treaty Act, which is a class B misdemeanor under

22  16 USC 703 and 707(a).  Each count relates to a different

23  facility.  The first count regards the Cedar Springs facility

24  in Wyoming; the second relates to the Roundhouse Wind Energy

25  facility also in Wyoming; and the final one is New Mexico Wind

1    in New Mexico.

2            Under the agreement, the defendant, in addition to

3    agreeing to plead guilty, waives the -- includes a standard

4    waiver of rights and agrees to also waive appeal.

5            They agree and stipulate to a recommended sentence

6    under a (c)(1)(C) plea of five years' probation, with a fine of

7    1.86 and change million dollars.

8            During the period of probation, they agree to comply

9    with an Eagle Management Plan, which is one of the attachments

10   to the plea agreement, and the terms thereof.

11           They also agree to pay restitution, and it is

12   delineated in the plea agreement to which it states those

13   restitution -- that restitution payment will be, then, divvied

14   out to -- based on the number of eagles in each state that died

15   at the defendant's properties.

16           The statutory maximum for each of the charges is

17   either a $15,000 fine under a Title 16, or twice the gross gain

18   or loss resulting from the conduct pursuant to the Alternative

19   Fines Act, five years of probation and a special assessment of

20   $50.

21           Defendant also agrees to, pursuant to the terms of the

22   EMP, apply for eagle take permits at each of the 50 facilities

23   at which either an eagle has been documented to have died or at

24   four facilities that are not yet operational.  Those four

25   facilities predict -- they are predicted to take an eagle.

1      I'm sorry.  The total restitution amount was

2  $6,210,991 related to 123 eagle fatalities across these

3  facilities.

4      The 50 facilities are specified by name in the plea

5  agreement for which applications must be submitted for eagle

6  take permits.

7      The plea also sets out a schedule of meetings to --

8  for all the parties to get together and review progress every

9  six months during the first two years of the probationary

10 period and once every 12 months thereafter.  And there is a

11 provision for a report in writing to the Court by the probation

12 office every 12 months.

13     In addition, there is a provision in the EMP that's

14 cross-referenced in the plea agreement requiring that the

15 defendant implement minimization measures at facilities as

16 selected by the Fish & Wildlife Service and that is laid out in

17 more detail, that process, in the Eagle Management Plan.  But

18 there is a cost cap on what they may be required to spend on

19 those minimization measures of 23 million over five years of

20 probation, with no more than 7 million in each of the first two

21 years, and then no more than 9 million in the third, fourth or

22 fifth years of probation.

23     There's also specific requirements about information

24 that must be provided.  Within 30 days of the plea the

25 defendant must provide to the Fish & Wildlife Service its site

1   assessments and turbine siting plans for the four facilities

2   not yet operational.

3          In return, the Government undertakes certain

4   nonprosecution commitments.  The first and primary one is to

5   not bring further charges for the past takes of eagles at any

6   of these listed facilities, and that's in paragraph 16(a).

7          Then for future takings, it is the purpose of the EMP

8   to try to avoid those takings, but the parties all recognize

9   that, despite best efforts, it is certainly possible that such

10  takes will occur.

11         If -- the Government agrees not to prosecute those

12  future taking as these listed facilities, including taking a

13  probation violation petition, if they occur while the defendant

14  is in complete compliance with the plea agreement and the Eagle

15  Management Plan but before any eagle take permit is issued.

16  Once the final action is taken on the eagle take permit, that

17  provision would no longer apply.

18         For other facilities that are not listed in this

19  agreement, if there is a death at one of those facilities, the

20  Government, again, agrees not to prosecute, provided that the

21  defendant or its affiliates either submit and complete an eagle

22  take permit application within six months of that eagle death

23  or otherwise resolves any such taking with and to the

24  satisfaction of the Fish & Wildlife Service within nine months

25  of that eagle death.

1          We also have a provision in the plea agreement that

2   would allow on a contractual basis for the parties to extend

3   that nonprosecution agreement for up to an additional five

4   years past the probationary period so that the eagle take

5   permits can be all issued before any further action might be

6   taken.

7          That provision also envisions a new cost cap for

8   additional minimization measures during those five years, and

9   there's a formula laid out in the plea agreement for

10  determining that additional cost cap when and if such an

11  extension is agreed to.

12         The Government has also made certain representations

13  which are laid out in the plea agreement regarding other -- its

14  intent or lack of intent regarding any other prosecutions that

15  are not dealing with ESI directly.

16         And the agreement is binding on the Environmental

17  Crimes Section and the U.S. Attorney's Office of the District

18  of Wyoming.  The U.S. Attorney's Office of the District of

19  California and District of New Mexico also participated in or

20  were informed of the investigation, have been consulted

21  regarding the terms of the agreement and have no objection to

22  the District of Wyoming and the Environmental Crimes Section

23  entering into it.

24         And, of course, there is a provision for the special

25  assessment of $50 on each count for a total of $150.

1          And that covers in summary the entire agreement, Your

2    Honor.

3          THE COURT:  All right.  Ms. Colbourn, thank you.  And

4    I understand if the agreement is accepted -- the binding

5    agreement is accepted by the Court, there's also a further

6    provision of a waiver of any right to appeal the sentence that

7    may be imposed here today.

8          Is that your understanding as well?

9          MS. COLBOURN:  Yes, Your Honor.

10         THE COURT:  All right.  Thank you.

11         Well, let me turn to Mr. Wagner or Mr. Sansonetti.  Is

12   that an accurate summary of the plea agreement that's spelled

13   out in detail, obviously, in the plea agreement itself?

14         MR. WAGNER:  Yes, Your Honor.  This is Mr. Wagner, Ben

15   Wagner, for the defendant.  That is an accurate summary.  That

16   covers all the material terms of the plea agreement.

17         The one thing I would add is the restitution

18   obligation that Ms. Colbourn described of $6,210,991, there's a

19   provision that recognizes that a prepayment was already made to

20   the State of California in the amount of $2,206,260.  So I

21   wanted to note that for the record.

22         But, otherwise, I don't have any disagreement with the

23   way it has been described by Ms. Colbourn.

24         THE COURT:  Very well.

25         Ms. Colbourn, the prepayment made in California that's

1  accurately reflected in the plea agreement, that's also your

2  understanding as well?

3         MS. COLBOURN:  Absolutely, Your Honor.

4         THE COURT:  Okay.  Mr. Ross, let me ask you a couple

5  of questions.

6         First of all, did you hear the summary of the material

7  terms of this plea agreement as outlined by Mr. Wagner and

8  Ms. Colbourn?

9         THE DEFENDANT:  I did, Your Honor.

10         THE COURT:  And is that the agreement as you

11  understand it on behalf of ESI Energy, LLC?

12         THE DEFENDANT:  It is, Your Honor.

13         THE COURT:  And are there any other promises or

14  conditions that you believe exist that are not mentioned or

15  contained in this written plea agreement?

16         THE DEFENDANT:  No, Your Honor.

17         THE COURT:  Did your attorneys answer all of your

18  questions pertaining to the terms of this written plea

19  agreement?

20         THE DEFENDANT:  Yes, Your Honor.

21         THE COURT:  And on behalf of ESI Energy, LLC, are you

22  entering into this plea agreement knowingly and voluntarily?

23         THE DEFENDANT:  Yes, Your Honor.

24         THE COURT:  Very well.  I want to take just a

25  moment -- well, let me ask one final question.

1          Did you carefully read the written plea agreement

2    before you signed the document on behalf of ESI Energy?

3          THE DEFENDANT:  I did, Your Honor.

4          THE COURT:  I want to take just a moment and go over

5    the three counts to which you intend to plead guilty pursuant

6    to this plea agreement.

7          Do you have a copy of the Information in front of you,

8    sir?

9          THE DEFENDANT:  I do, Your Honor.

10         MR. WAGNER:  Your Honor, this is Ben Wagner.  If I

11   could interject, there's one issue on one of the counts that

12   sort of is an administrative issue that came to our attention

13   earlier today which I've traded emails with the Government

14   about, but if I could bring that to your attention.

15         THE COURT:  You may.

16         MR. WAGNER:  It has to do with the date range for

17   Count One which is on page 15 of the Information.  It currently

18   reads "between on or about April 2021 and January 2022."  We

19   think it should actually start November 2020.

20         And I think we could accomplish that amendment, if the

21   Court agrees, by interlineation or simply by stipulation.  And

22   I can elaborate on the details to that if Your Honor is

23   interested.

24         THE COURT:  Thank you, Mr. Wagner.

25         Let me check in with Ms. Colbourn first.

1        Ms. Colbourn, your position regarding the amendment

2   for Count One beginning on November of 2020 instead of April of

3   2021?

4        MS. COLBOURN:  I have no objection to that, Your

5   Honor.

6        THE COURT:  I wonder if it wouldn't make sense

7   following today's proceeding, just to make sure we've got the

8   correct dates, to simply file an amended Information with those

9   correct dates attributed to Count One.

10        Ms. Colbourn, is that workable for you?

11        MS. COLBOURN:  Yes, Your Honor.

12        THE COURT:  All right.  Very well.

13        Okay.  Well, Mr. Ross, let's take a look at those

14   three counts, beginning on page 15, starting with Count One.

15        And as amended, they read as follows, if you want to

16   follow along:  *Between on or about, now, November 2020 and*

17   *January 2022, in the District of Wyoming, the Defendant ESI*

18   *Energy, LLC, through an entity and others acting on its behalf,*

19   *did unlawfully take migratory birds at its,* quote, *Cedar*

20   *Springs wind facility in Converse County, including at least*

21   *four golden eagles, without a permit or other authorization*

22   *from the United States Fish & Wildlife Service, in violation of*

23   *16 United States Code, Sections 703 and 707(a).*

24        Count Two alleges:  *Between on or about September*

25   *17th, 2020, and November 17th, 2020, in the District of*

1   *Wyoming, the Defendant ESI Energy, LLC, through an entity and*

2   *others acting on its behalf, did unlawfully take migratory*

3   *birds at its,* quote, *Roundhouse,* end quote, *wind facility in*

4   *Laramie County, including at least three golden eagles, without*

5   *a permit or other authorization from the United States Fish &*

6   *Wildlife Service, in violation of 16 United States Code,*

7   *Sections 703 and 707(a).*

8            And finally, Count Three alleges:  *On or about*

9   *December 29th, 2020, in the District of New Mexico, the*

10  *Defendant ESI Energy, LLC, through an entity and others acting*

11  *on its behalf, did unlawfully take migratory birds at its,*

12  quote, *New Mexico Wind,* end quote, *facility, including at least*

13  *two golden eagles, without a permit or other authorization from*

14  *the United States Fish & Wildlife Service, in violation of 16*

15  *United States Code, Sections 703 and 707(a).*

16           And then, Mr. Ross, attached to the information should

17  be a penalty summary that outlines the maximum penalties

18  applicable to each of these counts.

19           Do you see that document, sir?

20           THE DEFENDANT:  I do, Your Honor.

21           THE COURT:  And, as you can tell, for each count the

22  penalties are the same.  Each separately has a maximum penalty

23  of not more than a $15,000 fine, or twice the gross gain or

24  loss from conduct, not more than five years of probation, and a

25  mandatory $50 special assessment for each count.

1        For all three counts, if they were to run

2   consecutively, that is, one after another, the total maximum

3   penalties, as noted below, include a fine of not more than

4   $15,000, or twice -- excuse me -- not more than $45,000 in

5   total, or twice the gross gain or loss from the conduct; again,

6   not more than five years of probation, and $150 in maximum

7   special assessments.

8        Each of these three counts are class B petty

9   misdemeanor offenses.

10        Do you understand, Mr. Ross, the nature of the

11   allegations alleged in all three counts and also the maximum

12   penalties for all three counts?

13        THE DEFENDANT:  I do, Your Honor.

14        THE COURT:  And you need to understand, Mr. Ross, that

15   you on behalf of the company have the right to enter and/or

16   persist in not guilty pleas to all three counts.  And if you so

17   persisted, you would have the right to a public trial before

18   the Court, commonly referred to as a bench trial.

19        At that trial, the Court would hear and consider the

20   evidence, and you would be presumed innocent.  And I could only

21   find you guilty if all -- if I found that the United States had

22   proven beyond a reasonable doubt that you were, in fact, guilty

23   of the crimes charged.

24        In addition, you do have the right to be represented

25   by an attorney at every stage of these proceedings.  At a trial

1  on this charge, you would have the right with the assistance of

2  your attorneys to hear and confront through cross-examination

3  any witnesses called on behalf of the United States.

4          You would also have the right, if appropriate, to

5  present your own evidence and to call your own witnesses, and

6  to the extent that any witness was reluctant or refused to come

7  forward and testify, you would have the power of court process

8  to compel or subpoena any witness to come testify on your

9  behalf.

10          In addition, you could testify on behalf of the

11  company, or, if you so choose, you could remain silent on

12  behalf of the company.  If you remain silent, you would have --

13  it would be known that you have a constitutional right to do so

14  and nothing could be inferred against you in exercising that

15  right.

16          Mr. Ross, do you understand these rights?

17          THE DEFENDANT:  I do, Your Honor.

18          THE COURT:  And you understand that by pleading guilty

19  to one or more of these charges this afternoon on behalf of the

20  company, you will be giving up these rights; there will be no

21  trial because you will have admitted under oath to having

22  committed the offenses to which you intend to plead guilty, and

23  the only thing left will be the imposition of the sentence?

24          Do you understand that, sir?

25          THE DEFENDANT:  I do, Your Honor.

1          THE COURT:  Also, it is important to note that in a

2    moment you will be required to provide a factual basis

3    establishing and admitting to the essential elements of the

4    crimes to which you intend to plead guilty.  And in doing so on

5    behalf of the company, you are giving up the right to remain

6    silent and those statements can and may be used against you.

7    And should you fail to tell the truth, you could be prosecuted

8    for making a false statement or making -- or perjury for those

9    statements.

10          Do you understand that, sir?

11          THE DEFENDANT:  I do, Your Honor.

12          THE COURT:  With respect to the plea agreement,

13   Mr. Ross, as you have been advised, this is a binding plea

14   agreement, and, as such, if the Court accepts the terms of this

15   plea agreement, you on behalf of the company would not,

16   thereafter, be permitted to withdraw the pleas of guilty that

17   you're anticipated to enter.  Instead, you would be bound by

18   the sentence as agreed upon in this written plea agreement.

19          On the other hand, if for some reason I determine that

20   it is inappropriate and reject the terms of this binding plea

21   agreement in accordance with Rule 11(c)(1)(C) of the Federal

22   Rules of Criminal Procedure, you would thereafter be permitted

23   to withdraw your pleas of guilty and proceed to trial as you

24   wish.

25          Do you understand the differences between those two,

Docket 22-CR-048-R                                              19

1    sir?

2           THE DEFENDANT:  I do, Your Honor.

3           THE COURT:  Also, as mentioned a moment ago, there is

4    a provision that waives the company's rights to appeal any

5    sentence that may be imposed in this case.  You understand,

6    sir, that the Tenth Circuit Court of Appeals upholds such

7    waivers, and whatever sentence is imposed will be the sentence

8    that will be served and -- imposed here today.

9           Do you understand that?

10          THE DEFENDANT:  I do, Your Honor.

11          THE COURT:  So, Mr. Ross, apart from the plea

12   agreement that we have reviewed and discussed here this

13   afternoon, have there been any other promises or threats or

14   anything forced in any way upon you or the company to get you

15   to plead guilty here today?

16          THE DEFENDANT:  No, Your Honor.

17          THE COURT:  And on behalf of the company, are you

18   making these pleas of guilty voluntarily and on your own free

19   will?

20          THE DEFENDANT:  I am, Your Honor.

21          THE COURT:  And have you thoroughly discussed the

22   making of these pleas with your attorneys?

23          THE DEFENDANT:  I have, Your Honor.

24          THE COURT:  And are you satisfied with your attorneys'

25   representations in this matter?

1                THE DEFENDANT:  I am, Your Honor.

2                THE COURT:  And to you, Mr. Wagner, or Mr. Sansonetti,

3        have all formal plea offers from the United States been

4        conveyed and shared with the defendant in this matter?

5                MR. WAGNER:  Yes, Your Honor.

6                THE COURT:  Very well.

7                Mr. Ross, any other questions for your attorneys

8        before I formally ask you to enter pleas to these counts?

9                THE DEFENDANT:  I do not, Your Honor.

10                THE COURT:  One quick point of clarification before I

11       ask Mr. Ross to enter those pleas, and that pertains to the

12       requirements -- or the involvement, rather, of the Court's

13       probation office that's outlined on both pages 3 and 11.

14                At the top of page 3, there's a reference, first full

15       sentence, that indicates that during the term of the

16       defendant's probation, the defendant shall notify the United

17       States Probation Office for the District of Wyoming of any

18       corporate name change or any other change in the corporate

19       structure.

20                It would be my proposal, if accepted here in a moment,

21       that, instead, that information be provided directly to the

22       Court through a filing and that we leave the probation office

23       out of that equation, given that they won't be supervising any

24       probationary terms.

25                Is that agreeable, first of all, to the United States?

Docket 22-CR-048-R                                                    21

1   Ms. Colbourn?

2          MS. COLBOURN:  Yes, Your Honor.

3          THE COURT:  And Mr. Wagner, on behalf of Mr. Ross?

4          MR. WAGNER:  Yes, Your Honor, that's acceptable to

5   ESI.

6          THE COURT:  And the next reference of probation is

7   found on page 11, (iii) toward the end, and this is under the

8   provision of the plea agreement pertaining to -- let's see.

9   Sorry -- the frequency of the meetings during the 60 months of

10  probation.

11         And it indicates in the plea agreement under (iii)

12  that:  *Every 12 months under the probation period the defendant*

13  *shall report in writing to the Court (via the U.S. Probation*

14  *Office.)*

15         I think there's a couple of ways to leave the

16  probation office out of that portion of the plea agreement, and

17  I would propose that either the writing be provided and filed

18  with the Court, if that's the parties' acceptance -- or if you

19  will accept that provision, or that it simply be provided to

20  the department, including the U.S. Fish & Wildlife Service, and

21  that if there's an issue or concern about the reports or the

22  timeliness of the reports, that that can be brought to the

23  Court's attention at a later time.

24         So, again, the thrust of all of this is to leave the

25  Court's probation office out of it.  And I think this is the

Docket 22-CR-048-R                                                    22

1    last reference to the probation office.

2            So, Ms. Colbourn, as to that provision, any thoughts

3    or suggestions about that in particular?

4            MS. COLBOURN:  I'm fine, Your Honor, with leaving the

5    probation office out of it, if that's your preference.  I would

6    still like to have that report go to the Court, as well as the

7    department.

8            THE COURT:  Okay.  Very well.

9            Any objection with that on behalf of the defendant,

10   Mr. Wagner?

11           MR. WAGNER:  No, Your Honor.

12           THE COURT:  Okay.  So with those minor

13   clarifications -- I thought it best to address those before we

14   took the pleas on behalf of ESI Energy.

15           So now is ESI Energy prepared to enter those pleas at

16   this time, Mr. Wagner?

17           MR. WAGNER:  Yes, Your Honor.

18           THE COURT:  Okay.  Mr. Ross, again turning to page 15

19   of the Information, to the charge alleged in Count One, again,

20   unlawful taking of migratory birds, how do you plead, sir?

21           THE DEFENDANT:  Guilty, Your Honor.

22           THE COURT:  As to Count Two that also alleges the

23   unlawful taking of migratory birds, how do you plead?

24           THE DEFENDANT:  Guilty, Your Honor.

25           THE COURT:  And, finally, as to Count Three that,

1   likewise, alleges unlawful taking of migratory birds, how do

2   you plead?

3           THE DEFENDANT:  Guilty, Your Honor.

4           THE COURT:  All three counts of guilty are on behalf

5   of the Defendant ESI Energy, LLC.  I will find that Mr. Ross,

6   on behalf of the company, is competent and alert, not under the

7   influence of any thing or substance which would adversely

8   affect his ability to understand and comprehend these

9   proceedings.  He, on behalf of the company, is competent to

10  enter a plea and the pleas have been made knowingly and

11  voluntarily, without any improper inducements or conditions.

12  They are free of coercion, and Mr. Ross understands the charge

13  and the consequences of these pleas.

14          The pleas have been entered after consultation with

15  competent counsel, and Mr. Ross, on behalf of ESI Energy, LLC,

16  has under oath provided a sufficient -- excuse me -- has

17  provided a sufficient guilty plea -- let me just in terms of

18  the sufficiency of the factual basis, my intent was to simply

19  have Mr. Ross acknowledge and accept the Attachment A, the

20  statement of facts contained in the plea agreement.

21          Any objection to that approach, Ms. Colbourn?

22          MS. COLBOURN:  No, Your Honor.

23          THE COURT:  And, Mr. Wagner?

24          MR. WAGNER:  No objection, Your Honor.

25          THE COURT:  Mr. Ross, as to the Attachment A contained

Docket 22-CR-048-R                                           24

1   in the plea agreement, have you carefully reviewed and read

2   that document as well, sir?

3          THE DEFENDANT:  I have, Your Honor.

4          THE COURT:  And on behalf of ESI Energy, LLC, do you

5   accept those facts as part of your factual basis for each of

6   these three counts?

7          THE DEFENDANT:  I do, Your Honor.

8          THE COURT:  And do you accept them as accurate as so

9   stated in that attachment?

10          THE DEFENDANT:  I do, Your Honor.

11          THE COURT:  Very well.  Then I will further find that

12   Mr. Ross has now provided a sufficient factual basis with his

13   acceptance of Attachment A and has established, therefore, each

14   and every essential element of the crimes to which he has

15   entered a plea of guilty on behalf of ESI Energy, LLC.

16          I will, therefore, accept the pleas of guilty and

17   adjudge ESI Energy, LLC, guilty of those three offenses.

18          Okay.  It is my understanding the parties wish to

19   immediately proceed to the sentencing portion of today's

20   hearing.

21          Is that correct, Ms. Colbourn?

22          MS. COLBOURN:  Yes, Your Honor.

23          THE COURT:  And Mr. Wagner?

24          MR. WAGNER:  Yes, it is, Your Honor.

25          THE COURT:  Mr. Ross, at this time, if there's

1    anything that you would like to add or say on behalf of ESI

2    Energy before I impose a sentence upon the defendant, you're

3    welcome to do so at this time.

4           THE DEFENDANT:  No, Your Honor.  I have nothing else

5    to add.

6           THE COURT:  Very well.  And on behalf of the

7    defendant, Mr. Wagner or Mr. Sansonetti, anything else that you

8    would like to add at this time?

9           MR. WAGNER:  No, Your Honor.

10          MR. SANSONETTI:  No, Your Honor.

11          MR. WAGNER:  Thanks for scheduling this promptly.  We

12    appreciate that.

13          THE COURT:  Not a problem at all.  Thank you for your

14    presence here this afternoon and everyone making this come

15    together.

16          Ms. Colbourn, on behalf of the United States, with the

17    understanding that I intend to adopt the binding provisions of

18    this plea agreement, is there anything else that you would like

19    to add on behalf of the United States?

20          MS. COLBOURN:  The only thing I would bring to your

21    attention, Your Honor, is that it would be helpful if in the

22    judgment as to the financial provisions for the fine amount and

23    the restitution amount that the judgment itself specify that

24    the fine amount go to the North American Wetlands Conservation

25    Fund and the restitution will be divided among the states as

1   provided in the plea agreement.  That will assist us and in

2   working with the clerk to get the money where it is supposed to

3   go.

4              Thank you, as Mr. Wagner said, for scheduling this as

5   you did.  It is much appreciated.

6              THE COURT:  Very well.  And thank you for that.

7              Well, Mr. Ross, I will impose the following sentence

8   upon ESI Energy, LLC, as documented on page 8 of the plea

9   agreement.

10             First of all, I will direct that a fine be paid in the

11  amount of $1,861,600.  And that is payable immediately, and it

12  is my understanding that you all are prepared to make that

13  payment today.

14             I will further impose the mandatory $50 special

15  assessments for each of the three counts for a further $150

16  total.

17             I will specify, as requested, that the fine imposed is

18  directed to the North American Wetlands Conservation Fund for

19  wetlands conservation work and specifically provided in the

20  North American Wetlands Conservation Act under federal law.

21             Further, I will place the Defendant ESI Energy, LLC,

22  under 60 months of unsupervised probation with the following

23  terms and conditions:  That within the first six months of the

24  probationary period, restitution be paid totalling $6,210,991

25  to the relevant agency of each state, as indicated in which the

1   eagle fatalities occurred.  And those are outlined and

2   specified specifically on page 9 of the plea agreement, in

3   particular amounts to include the states of California,

4   Wyoming, New Mexico, North Dakota, Colorado, Michigan, Arizona,

5   and Illinois.

6           As noted earlier in our proceeding, the defendant is

7   credited with having paid, through a subsidiary, to the State

8   of California pursuant to a prior civil agreement the amounts

9   of $2,206,260 and making the final amount owed in restitution

10  in California of $2,439,359.83.

11          Restitution will be paid to the clerk of court for the

12  District of Wyoming for all of these states.  And I think to

13  better track the payments, I would direct that the restitution

14  be payments -- payments be paid in equal monthly installments

15  beginning on May 5th and continuing on the 5th of every month

16  thereafter until paid in full.

17          And that -- if my calculation is correct, that would

18  mean that the last payment would be due on October 5th of --

19  and let's make it October 4th, just to capture the full six

20  months, so the 4th of October; otherwise, the first payment on

21  the 5th of May and the 5th of every month thereafter until the

22  final payment on October 4th.

23          MS. COLBOURN:  Your Honor.

24          THE COURT:  I'm sorry, Ms. Colbourn.

25          MS. COLBOURN:  Your Honor, I'm wondering if for

1  tracking purposes for the clerk it would be easier if the

2  payments were divided, perhaps, by state, or if they were all

3  made at one -- sort of one day certain at some point within

4  that six months, rather than a monthly -- because if it comes

5  in monthly, she's going to have then divide it by each of the

6  states which could be quite complicated.

7          THE COURT:  I think that's a fair observation.

8          Any objection, Mr. Wagner, if this is paid, instead,

9  in one lump sum, just to make the accounting work a little

10 easier?

11         MR. WAGNER:  We have no objection to that, Your Honor.

12 We could pay it in a lump sum if we have six months to do it.

13 We can make sure that we will pay it in a lump sum.

14         THE COURT:  Okay.  Let's make it really simple, then.

15 And let's call it October 1st, so we have a date certain,

16 October 1st for the entire lump sum.  And we can divvy out the

17 appropriate allocation to the states based on that lump sum.

18         So thank you, Ms. Colbourn and Mr. Wagner.

19         Further, I'll adopt the provisions of the Eagle

20 Management Plan and the requirements associated with that as

21 outlined in the plea agreement itself, to include the

22 Attachment B.  So I won't go into any specific details other

23 than to expressly adopt those provisions, again, as outlined in

24 the plea agreement.

25         Further, that includes the meeting requirements, the

1    expenditure requirements of the defendant within the

2    probationary period, and all other requirements of probation as

3    outlined in the written plea agreement.

4            Let me make sure I haven't left anything out here.

5            As noted, there is an appeal waiver, so we won't

6    address your right to appeal this matter.

7            And as indicated, the $50 on each count, the mandatory

8    $50 assessment, will be due today, along with the total fine

9    amount of $1,861,600.

10           Ms. Colbourn, have I left anything out in terms of the

11   agreed-upon binding sentence?

12           MS. COLBOURN:  As a condition of probation we also had

13   compliance with the Eagle Management Plan and the meetings.

14           THE COURT:  And I intended, if I didn't say that, to

15   adopt the requirements of Attachment B, the Eagle Management

16   Plan, and the requirements described therein, along with the

17   other summary of the terms of probation contained in the

18   earlier portions of the plea agreement itself.

19           But I'll simply -- because there's a great deal of

20   detail associated with the EMP, I will adopt those requirements

21   as agreed to in the Attachment B and other related provisions

22   of that plan.

23           MS. COLBOURN:  Thank you, Your Honor.

24           THE COURT:  You're welcome.

25           Mr. Wagner, have I left anything out that I may have

Docket 22-CR-048-R                                              30

1    missed here?

2              MR. WAGNER:  No, I don't believe so.  Thank you, Your

3    Honor.

4              THE COURT:  Okay.  Well, I know a great deal of

5    collaboration has gone into the agreement today, and that's the

6    reason that I've certainly very carefully read it and

7    considered it.  And I think these measures, hopefully, will

8    minimize and mitigate any further eagle mortalities associated

9    with collisions between the eagles and wind turbine rotor

10   blades.  So I appreciate all the efforts.  I'm sure this didn't

11   happen overnight, in fact, I'm confident it did not, so I

12   appreciate everyone's cooperation in reaching this resolution.

13             But I think we've covered everything.  And if I

14   haven't expressly stated, I have adopted, other than the minor

15   tweaks that we have addressed, the terms of the binding plea

16   agreement in full.

17             Anything else I can address for the parties here this

18   afternoon?  Ms. Colbourn?

19             MS. COLBOURN:  No, Your Honor.  We will be providing

20   to the clerk a list of the state agencies, the addresses and

21   the contact information and the accounting information for the

22   wetlands fund so that she will have that in hand.

23             THE COURT:  That will be much appreciated.  Thank you

24   for that.

25             Mr. Wagner, anything else I can address for your

1  client today?

2        MR. SANSONETTI:  Your Honor, this is Tom Sansonetti.

3  I would note that my partner, Mr. Pope, is there in the

4  courtroom and has the two requisite checks that were referred

5  to, so those can be delivered right there on the spot as we

6  adjourn.

7        THE COURT:  All right.  I did note Mr. Pope is present

8  and I think he has got a checkbook with him and is prepared to

9  write those checks.  But thank you, Mr. Sansonetti.  I

10 appreciate it.

11       Anything else on behalf of the Defendant ESI Energy,

12 Mr. Sansonetti or Mr. Wagner or Mr. Ross?

13       MR. WAGNER:  No, nothing.  Nothing to add.

14       THE DEFENDANT:  Nothing, Your Honor.

15       MR. SANSONETTI:  Nothing else, Your Honor.

16       THE COURT:  Okay.  Mr. Kubichek, anything else for

17 you?

18       MR. KUBICHEK:  We're good here, Your Honor.  Thank

19 you.

20       THE COURT:  All right.  Thank you all for your time

21 this afternoon.  If there's nothing further, we will say

22 good-bye.  Thank you, everyone.

23       (Proceedings concluded 4:27 p.m., April 5, 2022.)

24

25

1              C E R T I F I C A T E

2

3

4

5         I, JANET DAVIS, Federal Official Court Reporter for

6    the United States District Court for the District of Wyoming, a

7    Registered Diplomate Reporter, Federal Certified Realtime

8    Reporter, and Certified Realtime Reporter, do hereby certify

9    that I reported by machine shorthand the foregoing proceedings

10   contained herein on the aforementioned subject on the date

11   herein set forth, and that the foregoing pages constitute a

12   full, true and correct transcript.

13

14         Dated this 12th day of April, 2022.

15

16

17

18         /s/  *Janet Davis*

19         _____

20             JANET DAVIS, RDR, FCRR, CRR
               Federal Official Court Reporter

21

22

23

24

25